

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. J. P. Bryan
County Attorney
Brazoria County
Angleton, Texas

Dear Sir:

Opinion No. O-2468
Re: The constitutionality of H. B.
No. 700 of the 46th Legisla-
ture.

We are pleased to reply to your letter of re-
cent date, in which you request the opinion of this
department upon the constitutionality of H.B. No. 700,
enacted by the 46th Leg., (Acts 1939, 46th Leg., p.
251; Art. 212a, Penal Code of Texas).

This Act reads as follows:

"Art. 212a. POLITICAL ADVERTISING, REGULA-
TIONS CONCERNING
Section 1. That no newspaper, magazine,
or other publication, published daily, bi-
weekly, weekly, monthly, or at other inter-
vals shall sell, solicit, bargain for, offer,
or accept for money, other consideration, or
favors, any kind or manner of political ad-
vertising from more than one candidate for
any or all local, county State or Federal
offices, unless such publication shall have
been published and distributed generally for
at least twelve (12) months next preceding
the acceptance of the advertising.

"Sec. 2. Provided however that this Act
shall not apply to publications which have
been published and circulated generally for
at least twelve (12) months next preceding
the acceptance of such advertising, for oth-
er than purely political purposes in some lo-
cality other than that in which it is located

Hon. J. P. Bryan, page 2

and published at the time of accepting such political advertising from more than one candidate.

"Sec. 3. And provided further that Section 1 of this Act shall not apply to publications which have, prior to the acceptance of political advertising from more than one candidate, been published and circulated generally for a period of less than one year immediately preceding the acceptance of such advertising in the event that such application can show ownership of its physical plant and that its advertising rates are in proportion to the amount and kind of its circulation.

"Sec. 4. Whoever violates the provisions of this Act shall be fined not less than Five Hundred Dollars ($500) nor more than One Thousand Dollars ($1,000), or be imprisoned in jail not less than three (3) months nor more than six (6) months, or both. Each violation of this Act shall be a separate offense."

House Bill 700 carves out of the recognized business of publishing a newspaper, magazine or other publication, a certain class and prohibits those in such class from selling political advertising to more than one candidate for any public office, leaving unabridged the right of the others within the general classification to do so. The prohibition against the forbidden publication from selling political advertising likewise, of course, precludes the candidates from purchasing such advertising, notwithstanding their desire to do so. In other words, the act destroys the before existing right of the prohibited publication to contract for the sale of its advertising space and as a necessary correlative destroys the right of candidates to contract with the forbidden publication for such advertising space.

A further analysis of the Act reveals that it

Hon. J. P. Bryan, page 3

was not designed to, and could not inherently, protect the public from anything inimical to the public health, morals, safety, or welfare. No one may seriously maintain, particularly the members of the Legislature who enacted this law, that under guise of the police power, the public should be protected from reading political advertisements. Or that political advertisement in a newspaper of less than 12 months in existence is harmful to the people; whereas, in a publication of more than 12 months of existence, it is not so.

Furthermore, H. B. 700 may not be deemed to have been enacted to protect the candidate for office themselves in any way; of which the law may take cognizance, that did not, prior to the enactment of this law, exist under the absolute right of the candidate to contract for or refuse to contract for, the advertising offered by the particular publication.

Obviously, also, this law was not calculated to protect the publication affected; rather it curtails and limits their free and untrammeled right to sell a particular type of commodity most lucrative to the publication business.

May the Act, therefore, be upheld under Sec. 19 of Art. 1 of the Constitution of Texas, which reads:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of law of the land;"

or under Sec. 3 of Article 1 of the Constitution of Texas, which reads:

"All free men, when they form a social compact, have equal rights, and no man or set of men, is entitled to exclusive separate public emolument, or privileges, but in consideration of public services;"

or under Sec. 1 of the 14th Amendment of the Constitu-

Hon. J. P. Bryan, page 4

tion of the United States, which reads:

"All persons born or naturalized in the
United States, and subject to the jurisdic-
tion thereof, are citizens of the United
States and of the State wherein they reside.
No state shall make or enforce any law which
shall abridge the privileges or immunities
of citizens of the United States; nor shall
any state deprive any person of life, liber-
ty, or property, without due process of law;
nor deny to any person within its jurisdic-
tion the equal protection of the laws."

Touching the question of valid classification
and arbitrary discrimination, the United States Supreme
Court in the case of FROST v. CORPORATION COMM., 278 U.
S. 515, 522, announced these principles:

" * * * In either case; the classifica-
tion, in order to be valid, 'must rest upon
some ground of difference having a fair and
substantial relation to the object of the
legislation, so that all persons similarly
circumstanced shall be treated alike.' Roy-
ster Guano Co. v. Virginia, 253 U.S. 412,
413; Air-Way Corporation v. Day, 266 U. S.
71, 85; Schlesinger v. Wisconsin 270 U. S.
230, 240. That is to say, mere difference
is not enough: the attempted classification
'must always rest upon some difference which
bears a reasonable and just relation to the
act in respect to which the classification
is proposed, and can never be made arbitrari-
ly and without any such basis.' Gulf, Color-
ado & Santa Fe Ry. v. Elliott, 165 U.S. 150,
155. Louisville Gas Co. v. Coleman, supra,
p. 37 (277 U. S. 32)."

It was likewise declared by the Supreme Court
of Texas in the case of the TEXAS COMPANY v. STEPHENS,
100 Tex. 628, 640, 641, as follows:

" * * * The courts, under the previsions

Hon. J. P. Bryan, page 5

relied on, can only interfere when it is made
clearly to appear that an attempted class-
ification has no reasonable basis in the na-
ture of the businesses classified, and that
the law operates unequally upon subjects be-
tween which there is no real difference to
justify the separate treatment of them under-
taken by the Legislature. This is the rule
in applying both the state and federal con-
stitutions, and it has been so often stated
as to render unnecessary further discussion
of it. * * * "

In the case of LOSSING v. HUGHES, 244 S.W.
556, 559, 560, the court vigorously denounced the ar-
bitrary exercise of governmental power by the Legisla-
ture in creating a purported classification with no ra-
tional basis therefor. We quote as follows from this
opinion:

" * * * We recognize the well-establish-
ed principle that in the exercise of police
power the Legislature may make distinctions
based upon classification, provided the class-
ification rests upon a rational difference
which necessarily distinguishes all those of
particular classes from those of other classes.
However, it is vital to the validity of such
legislation that such rational basis must ex-
ist. The Legislature cannot by its arbitrary
fiat create such classification. If in the
nature of things there is no rational dis-
tinction upon which it is based in relation
to the subject-matter of the legislation and
the purposes sought to be attained, then the
law cannot survive the challenge of the cit-
izen or class of citizens discriminated against.
Under such circumstances, a law which works
the spoliation of the property of certain cit-
izens and subjects them to an exercise of gov-
ernmental power which is purely arbitrary,
branding them as criminals for committing acts
which are lawful when committed by others, is,
we think, clearly and altogether without sup-

Hon. J. P. Bryan, page 6

port in the theory that it affects equally
and alike all the individuals of the class
to which it pertains. Without indicating
any reason for it, the Legislature by the
provisions of this law imposes penalties and
restrictions upon the property rights which
inhere in the ownership and operation of com-
mercial motor vehicles, and exempts motor
vehicles used in agricultural pursuits from
such penalties and restrictions; and, equal-
ly without indicating any reason for it, makes
criminal the use of certain motor vehicles
for commercial purposes and, at the same time,
makes lawful the use of the same vehicles for
agricultural purposes upon the same roads.
No reason suggests itself to us as a justi-
fication of such discriminations. In these
respects, as well as in other respects appar-
ent at a glance, the owners and users of com-
mercial motor vehicles are made the victims
of capricious discrimination."

In the case of EX PARTE DREIBELBIS, 109 S. W.
(2d) 476, the Court of Criminal Appeals of Texas struck
down a city ordinance as being discriminatory and un-
constitutional which required a license fee of all tem-
porary merchants and exempting all persons who had been
engaged in certain designated businesses for a period
of one year or more. The court declared:

"An ordinance which attempts to distin-
guish between persons engaged in the same or
like businesses, merely on the basis of the
length of time each is engaged in the busi-
ness, is in contravention of sections 3 and
19 of Article I of the Constitution."

See also the following cases by the Court of
Criminal Appeals of Texas:

EX PARTE BAKER, 78 SW (2d) 610;
EX PARTE JOHNS, 86 SW (2d) 709;
JACKSON v. STATE, 117 SW 818;
RAINEY v. STATE, 53 SW 882.

Hon. J. P. Bryan, page 7

We regard it as clear that H. B. 700, in its discrimination between publications is class legislation and offends against the quoted provisions of the state and federal constitutions. No law may, upon considerations enacted into H. B. 700, deny the ordinary right of contract as is done by this Act. Reduced to its ultimate effect, this statute forbids those publications in the arbitrarily designated class from selling political advertising to more than one candidate; whereas, other publications may sell such with immunity, notwithstanding the fact that all are engaged in the same business with the general public and to the same end, namely, that of reaping profit. It produces a classification which subjects one to a burden from which the other is relieved, and is essentially arbitrary because based upon no real or substantial differences having reasonable relation to the subject dealt with by the statutes. The public health, morals, safety or welfare is not involved; there is involved the unabridged right, under the common law and in a free country, of a citizen to publish a newspaper, magazine or other publications, and to sell a recognized commodity in connection therewith, together with the corresponding right of an individual to purchase or refuse such offered commodity, Such rights are unconstitutionally invaded by this law.

We also point out that this statute is subject to constitutional criticism, as a penal statute, because of the indefiniteness and uncertainty of various of its terms. The meaning of the language "unless such publication shall have been published and distributed generally" is lacking in definition and certainty. Likewise, the meaning of the language in Section 3 of the Act "in the event that such application can show ownership of its physical plant and that its advertising rates are in proportion to the amount and kind of its circulation" is manifestly susceptible of various meanings. It is well settled that a penal offense must be clearly defined by the statute creating it, otherwise, the statute must fall under the requirements of the Constitution.

Moreover, H. B. 700 may not be sustained under the constitutional guarantees of freedom of the press. As declared by the United States Supreme Court in the case of GROSJEAN V. AMERICAN PRESS CO., 297 U. S. 233, the predominant purpose of the grant of immunity in the constitutional guaranty of freedom of the press, was to preserve an untram-

Hon. J. P. Bryan, page 8

meled press. "To allow it to be fettered is to fetter our-
selves." In this case, the United States Supreme Court
struck down a statute of the State of Louisiana which under-
took to tax newspapers, periodicals, magazines or other pub-
lications having a circulation of more than twenty thousand
copies per week, as violative of the due process of law
clause of the United States Constitution because the statute
abridged freedom of the press. In commenting on this legis-
lative enactment, Mr. Justice Sutherland, in delivering the
opinion of the court, said:

> "The form in which the tax is imposed is in
> itself suspicious. It is not measured or limited
> by the volume of advertisements. It is measured
> alone by the extent of the circulation of the pub-
> lication in which the advertisements are carried,
> with the plain purpose of penalizing the publishers
> and curtailing the circulation of a selected group
> of newspapers."

Freedom of the press, guaranteed by the United States
Constitution and by the Constitution of Texas, vouchsafes to
each and every publication of our land the right of due pro-
cess in any classification imposing upon it restraints in its
ordinary course of business. In abridging the rights of those
publications in the designated class, H. B. 700 offends against
these constitutional safeguards.

You are, accordingly, respectfully advised that it
is the opinion of this Department that H. B. 700 of the 46th
Legislature, above set out, contravenes the Constitution of
Texas and of the United States, and is, therefore, unconstitu-
tional and void.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUL 5, 1940

FIRST ASSISTANT
ATTORNEY GENERAL

By
Zollie C. Steakley
Assistant

ZCS:OB

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE

APPROVED
OPINION
COMMITTEE
BY
CHAIR